**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WAYNE EARLEY,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:12-1886** |
| **v.** | : | **(JUDGE MANNION[1])** |
| **GATEHOUSE MEDIA** | : | |
| **PENNSYLVANIA HOLDINGS, INC.,** | : | |
| **Defendant** | : | |
| | : | |

**M E M O R A N D U M**

Presently before the court is the defendant's motion to dismiss the plaintiff's complaint. (Doc. No. 2). Based upon the court's review of the motion and related materials, as well as upon consideration of oral arguments presented to the court, the motion to dismiss will be granted without prejudice to allow the plaintiff to file an amended complaint.

**I.    PROCEDURAL HISTORY**

By way of relevant background, the plaintiff filed the instant action in the Court of Common Pleas of Wayne County on August 20, 2012, in which he alleges claims of defamation, (Count I), and false light invasion of privacy,

---

[1]The instant action was originally assigned to the Honorable A. Richard Caputo. By verbal order, on January 7, 2013, the matter was reassigned.

(Count II)[2]. (Doc. No. 1). The defendant filed a notice of removal under 28 U.S.C. §1446(b), on September 20, 2012, on the basis of diversity jurisdiction pursuant to 28 U.S.C. §1332. (Id.).

On September 27, 2012, the defendant filed the pending motion to dismiss the plaintiff's complaint. (Doc. No. 2). A brief in support of the defendant's motion was filed on October 11, 2012. (Doc. No. 5). On November 26, 2012, the plaintiff filed a brief in opposition to the defendant's motion to dismiss. (Doc. No. 10). A reply brief was filed by the defendant on December 10, 2012. (Doc. No. 11).

Upon request, the court heard oral arguments on the motion to dismiss on March 27, 2013.

## II.    STANDARD OF REVIEW

The defendant's motion to dismiss is brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir.2005), and

---

[2]The plaintiff had also set forth claims of punitive damages, (Count III), and negligence, (Count IV), which he agreed to withdraw at the oral argument on the defendant's motion to dismiss. As a result, the court does not consider these claims herein.

dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263 (3d Cir.2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993). Moreover, "documents whose contents are alleged

in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir.2002). However, the court may not rely on other parts of the record in determining a motion to dismiss.

## III.   DISCUSSION

The following allegations are taken from the plaintiff's complaint and are accepted as true for purposes of considering the instant motion to dismiss. The plaintiff was employed as a general contractor and carpenter for thirty-five years doing business throughout Northeastern Pennsylvania. During this time, he and his wife resided in the Honesdale, Pennsylvania, area.

In 1998, the plaintiff became the Code Enforcement Officer with Honesdale Borough. Beginning in 2004, the plaintiff was hired by Honesdale Borough as its Building Construction, Zoning and General Code Enforcement official.

The plaintiff has been certified by the Department of Labor and Industry as a Building Code Official and permitted to perform Building Code Official work for commercial construction since April 23, 2004. Since 2007, the plaintiff is also certified by the Department of Labor and Industry as an Accessability Inspector/Plans Examiner and permitted to perform accessability inspections and plan review for commercial construction, which certification expires on December 9, 2013.

4

Pursuant to an agreement between the plaintiff and Honesdale Borough, the Borough was responsible for paying for the plaintiff's training and the licensing or certification of plaintiff in the relevant areas in which he was expected to inspect and for which certification existed. Between May 5, 2004, and March 1, 2012, pursuant to his agreement with the Borough, the plaintiff attended and completed numerous training courses and subsequently passed mandatory testing for certification in the areas associated with his training. The training courses completed and passed by the plaintiff were conducted by the International Code Council. These courses qualified him to be certified by the Pennsylvania Department of Labor and Industry in the areas in which he was trained. However, the plaintiff maintains that in order to actually obtain certification, submission to the Department of Labor and Industry of proof of passing of the courses and a fee was required. Pursuant to the aforementioned agreement, this fee was to be paid by the Borough.

At some point, the Borough decided that the plaintiff should not seek certification to perform building, electrical, plumbing or energy inspections or plan review for commercial construction because it was too expensive to obtain the certification and, in addition, another individual already had the certification and could act in that capacity as needed. Plaintiff did not perform building, electrical, mechanical, plumbing or energy inspections or plan review for commercial construction after his certification as a Commercial Current Code Official expired.

To the extent that the plaintiff lacked the Department of Labor and Industry certification for any aspect required for his work, he contends the reason was the failure of the Borough to pay the licensing fee and submit the qualifications on his behalf. However, as part of the plaintiff's job as a Zoning Officer and Code Enforcement Officer, a certification from the Department of Labor and Industry or any other governmental body was not required.

On March 12, 2012, the plaintiff's employment with the Borough was terminated by a vote of the Honesdale Borough Council. At this time, he was certified by the Pennsylvania Department of Labor and Industry in all aspects of the work he performed for the Borough.

Shortly before his termination, beginning in or about January 2012 and continuing through March 2012, the defendant Wayne Independent began publishing a number of articles and editorial or opinion pieces in print and online regarding the plaintiff, which the plaintiff alleges created false or misleading impressions of him, including the impression that he may have been involved in either the break in, or cover up to the break in, of the zoning office; he was responsible for either the disappearance or mishandling of Texas Township records; he was improperly invoiced, paid or overpaid for work he completed for Texas Township; he committed a crime under the Pennsylvania Construction Code; he was not qualified to perform residential building inspections; he conducted commercial building inspections when he was not certified to do so; he was a drain on taxpayer money and costed the

Borough more money than he collected for the Borough; and he was fired as a result of being incompetent and unqualified to do his job.

After the plaintiff's termination, the defendant Wayne Independent continued to publish articles and editorials regarding the plaintiff, which he alleges continued to create false or misleading impressions, including that he failed to properly perform his job at both the Honesdale Borough and in Texas Township and asking the public to come forward with stories of "questionable dealings" with the plaintiff; he misappropriated or mishandled money while employed with the Borough; he forced an engineer to make a finding that resulted in the condemnation of a building following an earthquake in 2012; prior to the plaintiff's termination, paperwork in an application in the Borough for a Tractor Supply Store was improperly prepared or handled within the plaintiff's office; the Borough was much better since the plaintiff's termination; the plaintiff appealed a decision finding that he was not entitled to unemployment and, as a result, was improperly getting money from the taxpayers through unemployment.

By letter dated April 30, 2012, the District Attorney of Wayne County advised Honesdale Borough Council that there was no basis for criminal charges in any of the incidents noted or reported by the defendant Wayne Independent in the articles and editorials referencing the plaintiff.

Contrary to the articles and editorials in the defendant Wayne Independent, the plaintiff was not initially denied Unemployment

Compensation Benefits, but was granted benefits and the Borough, not plaintiff, appealed the decision. Plaintiff's benefits were again granted following the hearing on the Borough's appeal and defendant has never reported or referenced the decision of the Unemployment Compensation Referee decision granting plaintiff benefits.

At no time prior to or during the publication of the above articles did the plaintiff receive a reprimand or negative comment or report in his personnel file held by Honesdale Borough.

In publishing the articles and editorials referenced above, the plaintiff alleges that the defendant Wayne Independent engaged in a course of conduct which has sullied his reputation and good name by misrepresentations and false statements and accusations about his character, professional competency, professional qualifications and integrity. The plaintiff alleges that this was done either with the knowledge that the publications and the impressions which they were fairly calculated to produce were false or were published without regard to whether the same was true or false.

In light of the above, in Count I of his complaint which sets forth a claim of defamation, the plaintiff alleges that the false and misleading impressions made by the defendant's publications were defamatory and libelous by nature and when taken as a whole. The plaintiff alleges that as a direct and proximate result of the publications, he has been brought into reproach and has been injured in his good name, his personal and professional reputation,

his employment and employability, and his feelings, to his great detriment and financial loss.

In Count II of his complaint which sets forth a claim for false light invasion of privacy, the plaintiff alleges that the defendant's publications unreasonably placed him in a false light before the public. The plaintiff alleges that the false and misleading publicity of private facts regarding him in the publications specifically including, but without limitation, the article and editorial relating to plaintiff's unemployment compensation proceedings are highly offensive to a reasonable person such as plaintiff and are not of legitimate concern to the public. The plaintiff further alleges that the Wayne Independent in publishing the articles and editorials referenced did so either with knowledge of or in reckless disregard as to the falsity of the publicized matters and the false light in which it placed the plaintiff. As a direct and proximate result of the publications referenced, the plaintiff alleges that he has been brought into reproach and has been injured in his good name, his personal and professional reputation, his employment and employability, and his feelings, to his great detriment and financial loss.

In its pending motion, the defendant argues that the plaintiff's defamation and false light clams should be dismissed for the plaintiff's failure to properly allege actual malice with regard to either claim. The defendant argues that the plaintiff is a public official under the First Amendment and carried with his position responsibilities which would reasonably lead the

public to have an independent interest in his qualifications and the performance of his duties. As a public official, the defendant argues that the plaintiff has the additional burden of alleging actual malice in relation to his claims of defamation and false light.

In Pennsylvania, in order to prevail on a claim of defamation, a plaintiff must prove: (1) the defamatory character of the communication; (2) publication; (3) that the communication referred to the plaintiff; (4) a third party's understanding of the communication's defamatory character; and (5) injury. Marcone v. Penthouse Intern. Magazine for Men, 754 F.2d 1072 (3d Cir. 1985), *cert. denied*, 474 U.S. 864 (1985). In addition, in New York Times Co. v. Sullivan, 376 U.S. 254 (1964), the Supreme Court held that in a suit in which the defamation of a public official has been alleged, the First Amendment requires the plaintiff to establish that in publishing the defamatory statement the defendant acted with "actual malice – that is, with the knowledge that it was false or with reckless disregard of whether it was false or not." Id. at 279-80.

In the instant action, the plaintiff offers no substantive challenge to his status as a public official during his time as a Code Enforcement Officer and subsequent Building Construction, Zoning and General Code Enforcement Officer. However, he argues that this status would only be operative until he was fired from his job on March 12, 2012. After his firing, the plaintiff argues that his status as a public official is less than clear and that, as time passed,

he was entitled to be considered a private individual.

Concerning the plaintiff's argument, a public official continues to be a public official as to their conduct during their tenure, at least with respect to matters of continuing public interest. See Rosenblatt v. Baer, 383 U.S. 75, 87 n.14 (1966); Pierce v. Capital Cities Communications, Inc., 576 F.2d 495, 510 n.67 (3d Cir.), *cert. denied*, 439 U.S. 861 (1978), (former mayor and port authority head still public official as to his activities in office more than three years after leaving office). See also Zerangue v. TSP Newspapers, Inc., 814 F.2d 1066, 1069-1070 (5th Cir. 1987) (article concerning former officials' activities published almost six years after they lost their jobs; held, public officials); Time, Inc. v. Johnston, 448 F.2d 378, 381 (4th Cir. 1971) ("No rule of repose exists to inhibit speech relating to the public career of a public figure so long as newsworthiness and public interest attach to events in such public career").

Here, the articles attached as exhibits to the plaintiff's complaint relate to and reflect the continued interest in the plaintiff's performance of his duties as a Code Enforcement Officer and his subsequent discharge from that position. As such, the court finds that they were not taken out of the First Amendment realm simply because they were published after the plaintiff's discharge. The plaintiff was required, therefore, to properly allege actual

11

malice in relation to his defamation claim[3].

Actual malice is "a term of art denoting deliberate or reckless falsification." Masson v. New Yorker Magazine, 501 U.S. 496, 499 (1991). Setting aside the standard for deliberate conduct, "[r]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication," St. Amant v. Thompson, 309 U.S. 727, 731 (1968), or published the material while subjectively possessing a "high degree of awareness of the probable falsity of the publication," Garrison v. Louisiana, 379 U.S. 64, 74 (1964). As such, actual malice, even by way of recklessness, is a difficult standard to meet, and quite purposefully so. The Supreme Court has stated that "the stake of the people in public business and the conduct of public officials is so great that neither the defense of truth nor the standard of ordinary care would protect against self-censorship and thus adequately implement First Amendment policies. St. Amant, 390 U.S. at 731-32.

In the wake of Iqbal and Twombly, adequately pleading actual malice

---

[3]The court need not first determine whether the plaintiff plausibly states a claim for defamation before deciding whether he plausibly alleges actual malice in relation to that claim. Because the actual malice deficiency is the core and dispositive issue in this matter, the court addresses this matter first. See Schatz v. Repub. State Leadership Comm., 669 F.3d 50, 56 (1st Cir. 2012).

is an onerous task. The Court in Iqbal held that, where a particular state of mind is a necessary element of a claim, pleading of that state of mind must be plausible and supported by factual allegations. Iqbal, 556 U.S. 686-87 ("It is true that Rule 9(b) requires particularity when pleading 'fraud or mistake,' while allowing '[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally." But 'generally' is a relative term. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake. Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid – though still operative – strictures of Rule 8."). Thus, to properly allege a plausible malice claim, the plaintiff must still lay out enough facts from which malice might reasonably be inferred. See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 58 (1st Cir. 2010).

Upon review of the plaintiff's complaint, the plaintiff has failed to sufficiently plead actual malice so as to proceed with his defamation and false light claims. To this extent, the court does not consider the plaintiff's conclusory allegations with regard to knowledge or recklessness. See Schatz, supra. Excluding these allegations, the remainder of the plaintiff's allegations do not adequately touch upon facts supporting the plaintiff's claim of the defendant's knowledge or recklessness so as to adequately allege actual malice.

In his brief opposing the defendant's motion, without citation to any

authority, the plaintiff argues that the mere number of articles published about him by the defendant establishes actual malice. However, the number of articles, in and of itself, does not tend to establish that the defendant knew that the information in the articles was false or that the defendant acted with reckless disregard as to the truth or falsity of the information in the articles. Further, although there were apparently twenty-seven articles published about the plaintiff, the articles at issue relate to a number of separate incidents involving the plaintiff and, as the defendant argues, accepting the plaintiff's argument would allow actual malice to be inferred anytime a defamation claim was alleged in the context of concentrated press coverage, as happens in cases of high public interest, in contravention of the case law which indicates that actual malice requires adequate factual support to show that the defendant acted with knowledge that the information it published was false or with reckless disregard of whether it was false or not. Thus, even accepting the plaintiff's well-pleaded facts as true, he has failed to properly allege actual malice so as to state a plausible defamation claim against the defendant.

With respect to the plaintiff's false light claim, the elements to be proven in a false light claim are: (1) publicity, (2) given to private facts, (3) which would be highly offensive to a reasonable person and (4) which are not of legitimate concern to the public." Dice v. Johnson, 711 F. Supp. 2d 340, 359-60 (M.D. Pa. 2010) (citing Strickland v. Univ. of Scranton, 700 A.2d 979, 987 (Pa.Super.1997)). As with claims of defamation, in actions alleging false

light involving a public official, the plaintiff must properly plead and prove actual malice. Park v. Veasie, 2012 WL 1382222 (M.D.Pa. Apr. 20, 2012); Coughlin v. Westinghouse Broad. & Cable, Inc., 603 F.Supp. 377, 389 (E.D.Pa. 1985). For the reasons discussed above, the plaintiff has also failed to properly allege actual malice in relation to his false light claim. Therefore, the defendant's motion should be granted on this basis as well.

While the court finds that the defendant's motion to dismiss should be granted for the plaintiff's failure to properly allege actual malice as to his defamation and false light claims, such dismissal will be without prejudice to allow the plaintiff the opportunity to amend his complaint to properly do so, if in goof faith he can. To this extent, in his opposing brief, the plaintiff asks the court to afford him the opportunity to amend his complaint pursuant to Fed.R.Civ.P. 15(a)(2) to include more specific allegations in the event that the court finds his allegations to be insufficient. Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading after receiving leave of court, and the court should freely give leave when justice so requires. Fed.R.Civ.P. 15(a)(2). Moreover, "the Supreme Court has encouraged generous application of this rule generally, allowing leave to amend in the absence of evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowing the amendment [or] futility of amendment." Deen-Mitchell v. Lappin, 2012 WL

15

74900, \*4 (M.D. Pa. Jan. 10, 2012) (citing United States v. Verdekal, 2011 U.S. Dist. LEXIS 149616, at\*7 (M.D.Pa. Dec. 30, 2011) (citations and internal quotation marks omitted)). Given this, the court will grant the plaintiff's request to amend his complaint to cure the deficiencies of his complaint as discussed above.

Further, in order to clarify the scope of the plaintiff's amended complaint, the court will address the other arguments raised by the defendant in its motion to dismiss. The defendant also argues in its motion that the plaintiff's complaint should be dismissed for failure to comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Here, the defendant argues that the plaintiff's complaint fails to sufficiently plead the specific substance of the alleged defamatory statements as to provide adequate notice of the plaintiff's claims.

With respect to this argument, the Federal Rules of Civil Procedure do not require fact pleading, but only notice pleading. See Roskos v. Sugarloaf Twp., 295 F.Supp.2d 480, 492 (M.D.Pa. 2003); Fed. R. Civ. P. 8. Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint need only provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Twombly, 550 U.S. at 555 (citation omitted). While federal notice pleading does not require detailed factual allegations, the complaint must provide sufficient factual detail in order to provide notice of the

16

claim asserted. Id. (citation omitted). See also Phillips, 515 F.3d at 232 (citation omitted).

"[F]or a defamation claim brought in federal court, the plaintiff does not have to plead the precise defamatory statements as long as the count provides sufficient notice to the defendant." Roskos, 295 F.Supp.2d at 492. See also Reager v. Williams, 2009 WL 3182053 at *5 (M.D.Pa. Sept. 25, 2009) (quoting Roskos, supra).

In the instant case, the court finds that the complaint provides sufficient notice to the defendant of the nature of plaintiff's defamation case to survive this aspect of the defendant's motions to dismiss. To this extent, for each of the articles or editorials challenged by the plaintiff, he provides the date that the article or editorial was published, as well as a short statement or summarization of the information which he alleges to be defamatory. For example, the plaintiff alleges that on January 12, 2012, the defendant published an editorial which contained false or misleading information that gave the impression that the plaintiff was criminally responsible in either the break in, or cover up to a break in, at his own zoning office. The plaintiff attaches the publication to his complaint so that it may be examined in context. While the plaintiff does not quote the exact language printed in the editorial which he alleges is defamatory, the plaintiff's allegation is sufficient to put the defendant on notice of the plaintiff claims. The plaintiff provides similar allegations with respect to each of the articles which he claims

17

contains false or misleading statements.

Given that the court finds that the plaintiff's allegations are sufficient to meet the requirements of [Fed.R.Civ.P. 8](#) and to put the defendant on notice of the claims against it, the plaintiff will not be required to set forth with any further specificity the statements which he alleges to be defamatory.

Finally, citing to [Pierce v. Capital Cities Communications, Inc., 576 F.2d 495](#) (3d Cir.), *cert. denied*, [439 U.S. 861 (1978)](#), the defendant argues that the Third Circuit has foreclosed defamation by implication claims involving a public official as being incompatible with the First Amendment. The defendant argues that the same free speech concerns that led to the decision in Pierce have similarly compelled other jurisdictions to reject libel by implication claims as *per se* not actionable by public officials.

In considering the defendant's argument, the Third Circuit has discussed the interplay between state and federal law in defamation cases, stating that "[a]lthough a defamation suit has profound First Amendment implications, it is fundamentally a state cause of action." [Tucker v. Fischbein, 237 F.3d 275, 281 (3d Cir. 2001)](#). Under Pennsylvania state law, courts have recognized that a claim for defamation may exist where the words utilized themselves were not defamatory in nature, but the context in which they were issued created a defamatory implication. See e.g., [Thomas Merton Ctr. v. Rockwell Int'l Corp., 442 A.2d 213, 216 (Pa. 1981)](#) (discussing defamation by innuendo). Similarly, Pennsylvania courts have recognized that "the literal

18

accuracy of separate statements will not render a communication 'true' where . . . the implication of the communication as a whole was false." See Dunlap v. Phila. Newspapers, Inc., 48 A.2d 6, 15 (Pa.Super. 1982).

Moreover, just recently, the Third Circuit recognized libel by implication cases involving public officials. In Kendall v. Daily News Publishing, Co., 716 F.3d 82 (3d Cir. 2013), Judge Leon A. Kendall, formerly on the Virgin Islands Superior Court, alleged that the Daily News and Joy Blackburn defamed him while reporting on his decisions to release a charged defendant on his own recognizance, to place another individual under house arrest, and to retire. Judge Kendall's case proceeded to a jury trial, after which the jury returned a verdict in his favor. The defendants moved for a judgment notwithstanding the verdict and the Superior Court granted the motion directing a verdict in the defendants' favor. Judge Kendall appealed to the Virgin Islands Supreme Court which affirmed the Superior Court's judgment on the ground that Judge Kendall could not prove actual malice for any of the statements he claimed were defamatory. Judge Kendall requested *certiorari* which the Third Circuit granted.

In considering Judge Kendall's appeal, the Third Circuit found that the actual malice standard in ordinary defamation cases was different from the actual malice standard in defamation by implication cases. In ordinary defamation cases, the court indicated that intent to defame can be established solely through knowledge that the statement was false. In

defamation by implication cases, which are capable of two possible meanings, one that is defamatory and one that is not, the court held that there are two elements to establish actual malice: a "falsity" element and a "communicative intent" element.

To satisfy the "falsity" element, i.e., the extent to which the defendants must be aware that the defamatory meaning of their statement is false, the court stated that the plaintiff must show that the defendants either knew that the defamatory meaning of their statement was false or were reckless in regard to the defamatory meaning's falsity.

As to the "communicative intent" element, the Third Circuit indicated that mere knowledge or awareness of defamatory meaning did not suffice, as such a standard would result in a constitutional malice finding "no matter how unlikely it is that a listener would interpret the statement as having defamatory meaning." Id. at 91. Instead, the court indicated that the communicative intent element can be satisfied by demonstrating that the defendant either intended to communicate the defamatory meaning or knew of the defamatory meaning and was reckless in regard to it. The court stated that a minimum of reckless disregard of the defamatory meaning by clear and convincing evidence incorporated the Supreme Court's broad protection in public official cases for defamatory speech because it "requires that the defendants knew that the defamatory meaning was not just possible, but likely, and still made the statement despite their knowledge of that likelihood." Id.

20

Ultimately, the Third Circuit agreed with the Virgin Islands Supreme Court's ruling that the plaintiff had not established actual malice with respect to his defamation by implication claim and therefore affirmed.

Although the court in <u>Kendall</u> applied Virgin Islands law, courts within the Third Circuit, applying Pennsylvania law, have also recognized the viability of libel by implication claims involving public figures. <u>See</u> e.g., Mzamane v. Winfrey, 693 F.Supp.2d 422 (E.D.Pa. 2010) (deciding libel by implication claim brought by public figure, i.e., a former headmistress of a South African school for girls, against the school's founder, Oprah Winfrey, a prominent television personality).

The point being, a defamation by implication claim by a public official is still a viable claim, despite the defendant's attempt to argue to the contrary. However, that being said, as with the original claims of defamation, the plaintiff has a high hurdle to clear to adequately alleging actual malice in relation to the defamation by implication claim, as discussed above. As such, in amending his complaint, to the extent that the plaintiff wishes to bring a defamation or false light by implication claim, he is to adequately plead the actual malice requirements of such a claim.

On the basis of the foregoing, an appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: September 30, 2013**

O:\Mannion\shared\MEMORANDA - DJ\2012 MEMORANDA\12-1886-01.wpd