Mark R Zimmer
Attorney and Counselor At Law
ID #30405
1133 Main Street
Honesdale, PA 18431
(570) 253-0300 Fax (570) 300-1846

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WAYNE EARLEY,                                            :
                                                        :
            PLAINTIFF                                   :
 VS.                                                    :
                                                        : Case No. 3:12-cv-01886-MEM
GATEHOUSE MEDIA                                         :
PENNSYLVANIA HOLDINGS, INC.,                            :
d/b/a THE WAYNE INDEPENDENT,                            :
                                                        :
            DEFENDANTS                                  :
---------------------------------------------------------------------------------------------

## AMENDED COMPLAINT

        AND NOW comes Plaintiff, Wayne Earley, by and through his counsel, Mark R

Zimmer, Esquire, and files the following Amended Complaint in accordance with the

Court's Order of September 30, 2013:

### PARTIES

    1.  Plaintiff, Wayne Earley, is an adult individual who resides in Wayne County,

Pennsylvania and maintains an address of 73 Torrey Road, Honesdale, PA 18431.

1

2. Defendant is Gate House Media Pennsylvania Holdings, Inc., d/b/a The Wayne Independent, a Delaware Corporation, with its principal place of business at 350 WillowBrook Office, Fairport, NY 14450.

3. "The Wayne Independent" is a trade name utilized by GateHouse Media Pennsylvania Holdings, Inc., to publish a newspaper Tuesday through Saturday both in print and on line (www.wayneindependent.com) and maintains an address in Pennsylvania at 220 8th Street, Honesdale, PA 18431.

4. That at all times relevant hereto Defendant GateHouse Media Pennsylvania Holdings, Inc. and The Wayne Independent acted by and through their editors, writers, employees, agents, and servants, all of whom acted within the scope of their authority.

## JURISDICTION

5. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. Section 1332, since there is complete diversity of citizenship between Plaintiff and Defendant, inasmuch as this is an action between citizens of different states.

6. That the amount in controversy, exclusive of interest and cost, exceeds the sum of $75,000.00.

2

## BACKGROUND

7.  The Plaintiff incorporates herein by reference paragraphs 1 through 4 as if the same were fully set forth at length.

8.  Plaintiff was engaged for 35 years in Wayne County and Northeastern Pennsylvania in general as a general contractor and carpenter during which time he achieved and maintained an expertise in the area of contracting and the building trades.

9.  Plaintiff and his wife raised a family in Wayne County and specifically the Honesdale area.

10.  That beginning in 2004, Plaintiff was hired by Honesdale Borough as its Building Construction, Zoning and General Code Enforcement official.   Plaintiff had been the Code Enforcement Officer with Honesdale Borough since 1998.

11.  That Earley held the positions noted in paragraph 8 above until March 12, 2012, when he was terminated by a vote of the Honesdale Borough Council.

12.  That Plaintiff was registered as a Commercial Current Code Official in April of 2004, permitting him to perform any and all residential work until April 9, 2007.

3

13.  That as a registered Commercial Current Code Official starting in April of 2004, Plaintiff was permitted to perform any and all commercial work, except for accessability inspections and plan review, until April 9, 2009.

14.  That pursuant to the agreement between Plaintiff and Honesdale Borough, Honesdale Borough was responsible for paying for training and the licensing or certification of Plaintiff in the relevant areas in which he was expected to inspect and for which certification existed.

15.  That pursuant to the agreement between Honesdale Borough and Plaintiff, Earley attended and completed the following trainings and subsequently passed the mandatory tests for certification associated therewith:

   a.  Two days of accessability inspectors/plans examiner training (5/5/04)

   b.  Two days of residential electrical training (6/30/04)

   c.  Three days of commercial building inspector training (7/30/04)

   d.  Multi-Municipal training (6/15/05)

   e.  Two days of residential mechanical essentials training (1/26/06)

   f.  Two days of residential energy training (2/7/07)

   g.  Two days of residential electrical essentials training (3/3/07)

   h.  Two days of accessibility essentials training (3/9/07)

   I.  Two days of residential mechanical essential training (9/13/07)

4

j.  Two days of residential building code essentials training (10/10/07)

k.  Five days of international building code essentials training (3/24-3/28/08)

l.  One day of residential inspector training (2/11/09)

m.  Economic stimulus training (4/7/09)

n.  Two days of accessability training (5/6/10)

o.  Residential sprinkler training (9/25/10)

p.  Two days of residential inspections training (2/1/12)

q.  Solar hot water training (3/1/12)

16.  That the trainings completed and passed by Plaintiff were conducted by the International Code Council.

17.  That the passing of the courses noted in paragraph 14 above by Plaintiff, qualified him to be certified by the Pennsylvania Department of Labor and Industry in the areas in which he was trained.  **35 P.S. § 7210.701( c)**

18.  That the only thing which needed to be done in order to obtain certification was the submission to the Department of Labor and Industry of proof of passing of the courses and a $50.00 fee.

19.  That pursuant to the agreement between Plaintiff and the Honesdale Borough, said certification fee was to be paid by the Borough.

5

20.  That Plaintiff availed himself of the necessary trainings as soon as they became available and could be funded by the Borough.

21.  That Plaintiff has been certified by the Department of Labor and Industry as a Building Code Official and permitted to perform Building Code Official work for commercial construction since April 23, 2004.

22.  That Plaintiff is certified by the Department of Labor and Industry as an Accessability Inspector/Plans Examiner and permitted to perform Accessability Inspections and Plan Review for commercial construction since August 6, 2007.  Said certification expires December 9, 2013.

23.   That Honesdale Borough decided that Plaintiff should not seek certification to perform building, electrical, plumbing or energy inspections or plan review for commercial construction because it was too expensive to obtain such certification and Bob Bates already had said certification and could act in that capacity.

24.  That Plaintiff did not perform building, electrical, mechanical, plumbing or energy inspections or plan review for commercial construction after his certification for the same as a Commercial Current Code Official expired.

6

25.  That a certification from the Department of Labor and Industry or any other governmental body is not required for the part of Plaintiff's job known as Zoning Officer and Code Enforcement Officer.

26.  That to the extent that Plaintiff at any time lacked the Department of Labor and Industry certification for any aspect required for his work, the reason for said lack of certification was the failure of Honesdale Borough to pay the licensing fee and submit the qualifications on Plaintiffs' behalf.

27. That at the time of Plaintiff's termination by Honesdale Borough on March 12, 2012, Plaintiff was certified by the Pennsylvania Department of Labor and Industry in all aspects of the work he was to perform for Honesdale Borough.

28.  That as Honesdale Borough's Zoning Officer and General Code Enforcement Officer, Plaintiff was authorized and required to make inspections other than those under the Uniform Construction Code; said inspections included ones made under the Honesdale Borough Zoning Ordinance and the Property Maintenance Code.

29.  That as the General Code Enforcement Official and the certified Building Code Official Plaintiff was authorized to accept inspections of buildings being constructed in Honesdale Borough from individuals certified by the Department of

7

Labor and Industry in appropriate areas and accompany said certified inspectors on such inspections.

30.  That as a certified Building Code Official Plaintiff was authorized and required to sign Certificates of Occupancy for both residential and commercial buildings once they were completed and satisfied the Uniform Construction Code.

31.  That beginning on or about January, 2012, The Wayne Independent began publishing both in print and online false or misleading articles and editorial or opinion pieces regarding Plaintiff.  Said articles and editorials include the following:

a.  Editorial posted January 12, 2012, creates the impression in the mind of the average person to whom it is intended to circulate that Plaintiff is criminally responsible in either the break in or cover up to a break in at his own zoning office; (Said editorial is attached hereto, made a part hereof by reference and labeled Exhibit A.)

b.  By both an article and editorial posted February 3, 2012, Defendant creates the impression in the mind of the average person to whom it is intended to circulate that Plaintiff was criminally responsible for either the disappearance of or mishandling of Texas Township records; (Said article and editorial is attached hereto, made a part hereof by reference and labeled Exhibit B.)

8

c.  That by articles posted February 6, 2012, and February 9, 2012, Defendant creates the impression in the mind of the average person to whom it is intended to circulate that Plaintiff was improperly invoiced, paid or overpaid for the work he completed for Texas Township, Wayne County; (Said articles are attached hereto, made a part hereof by reference and labeled Exhibit C.)

d.  That by articles posted February 7, 8, and 10, 2012, Defendant creates the impression in the mind of the average person to whom it is intended to circulate that Plaintiff was somehow responsible for the criminal act of breaking into his own office over the weekend of February 6 and 7, 2012; (See articles attached hereto, made a part hereof by reference and labeled Exhibit D.)

e.  That by article published in the weekend edition of the Wayne Independent of February 25 through February 27, 2012, Defendant creates the impression in the mind of the average person to whom it is intended to circulate that Plaintiff committed a crime under the Pennsylvania Construction Code; (See article attached hereto, made a part hereof by reference and labeled Exhibit E.)

f.  The weekend edition of The Wayne Independent of February 25 through February 27, 2012, states that Wayne Earley was not qualified to perform residential building inspections thereby creating that impression in the mind of the average person; (see Exhibit E)

g.  The weekend edition of The Wayne Independent of February 25 through February 27, 2012, creates in the mind of the average person to whom it is intended to circulate that Plaintiff was conducting commercial building inspections when he was not certified to do so; (See Exhibit E)

h.  The weekend edition of The Wayne Independent of February 25 through February 27, 2012, creates in the mind of the average person to whom it is intended to circulate that Plaintiff was a drain on tax payer money and was costing the Borough of Honesdale more money than he collected for the Borough; (See Exhibit E)

I.  The edition of The Wayne Independent of February 28, 2012 creates in the mind of the average person to whom it is intended to circulate the impression that Plaintiff was unqualified and incompetent to complete residential home inspections and that he had been completing commercial inspections; (See Exhibit F)

j.  That by editorial posted March 12, 2012, The Wayne Independent creates the impression that Plaintiff should be fired from his job at Borough Council because he was not qualified to do inspections and incompetent in his job; (See opinion article attached hereto, made a part hereof by reference and labeled Exhibit G)

k.  That by article posted March 12, 2012, at 9:27 p.m., The Wayne Independent creates the impression in the mind of the average person that Plaintiff is

unqualified to do his job and incompetent and was fired as a result thereof. (See Exhibit H)

l.   That by article and editorial posted March 13, 2012, and published in print March 14, 2012, the Defendant creates the impression in the mind of the average person whom it is intended to circulate that Plaintiff was terminated from his job with Honesdale Borough because he was not qualified, incompetent, was a poor record keeper and had misused funds. (See article posted March 13, 2012, attached hereto, made a part hereof by reference and labeled Exhibit I and editorial posted and published March 13, 2012, attached hereto, made a part hereof and labeled Exhibit J)

32.   That The Wayne Independent continued its course of conduct of attacking Plaintiff after he had been terminated from his job in publications with false or misleading articles and editorial or opinion pieces regarding Wayne Earley. Said articles and editorials include the following:

A.   By article posted March 15, 2012, the Defendant creates the impression in the mind of the average person to whom it is intended to circulate that the Plaintiff had failed to properly perform his job both at Honesdale Borough and in Texas Township for several years while asking that the public come forward with stories of "questionable dealings" with Plaintiff. (See article posted March 15, 2012 attached hereto, made a part hereof by reference and labeled Exhibit K)

11

B.  That by editorial posted March 23, 2012, the Defendant creates the impression in the mind of the average person to whom it is intended to circulate that Plaintiff misappropriated or mishandled money while employed by the Borough. (See editorial of March 23, 2012, attached hereto, made a part hereof by reference and labeled Exhibit L)

C.  That by article and editorial of April 6, 2012, as well as article of April 9, 2012, the Defendant creates the impression in the mind of the average person to whom it is intended to circulate that Plaintiff forced an engineer to make a finding that resulted in the condemnation of a building following an earthquake in 2012.  (See article and editorial of April 6, 2012, attached hereto, made a part hereof by reference and labeled Exhibit M and article of April 9, 2012, attached hereto, made a part hereof by reference and labeled Exhibit N)

D.  That by article posted May 3, 2012, the Defendant creates the impression in the mind of the average person to whom it is intended to circulate that prior to Wayne Earley being terminated the paperwork on an application in the Borough for a tractor supply store was improperly prepared or handled within Plaintiff's office at the time.  (See article of May 3, 2012, attached hereto, made a part hereof by reference and labeled Exhibit O)

E.  That by editorial posted May 4, 2012, the Defendant creates the impression in the mind of the average person to whom it is intended to circulate that things are much better in Honesdale Borough now that the Plaintiff has been terminated and that any and all problems associated with the Borough are now better because he is no longer there.  (See editorial posted May 4, 2012 attached hereto, made a part hereof by reference and labeled Exhibit P)

F.  That by article posted on June 14, 2012, the Defendant creates the following impressions in the mind of the average person to whom the article was intended to circulate:

I.  That Plaintiff is improperly collecting unemployment;

ii.  That Plaintiff is not entitled to unemployment;

iii.  That Plaintiff appealed an initial decision that he was not entitled to unemployment;

iv.  That Plaintiff is continuing to improperly get money from the tax payers through unemployment;

(A copy of said article is attached hereto, made a part hereof by reference and labeled Exhibit Q)

13

G.  That by opinion posted June 14, 2012, and published June 14, 2012, entitled "Wayne, Wayne Go Away", the Defendant creates the following impressions in the mind of the average person to whom the article was intended to circulate:

I.  That he was initially denied unemployment compensation and appealed that decision;

ii. That he has already been paid too much money and should not receive unemployment;

iii. That he continues to cost the taxpayers money that they should not have to pay;

iv.  That the Borough and the people of Wayne County would be better off all together if Plaintiff simply went away.

(See June 14, 2012 editorial entitled "Wayne, Wayne Go Away" attached hereto, made a part hereof by reference and labeled Exhibit R)

33.  That the District Attorney of Wayne County by letter dated April 30, 2012, advised Honesdale Borough Council that there was no basis for criminal charges in any of the incidents noted or reported by The Wayne Independent in the articles and editorials referenced in Paragraphs 31 and 32 above.  (A copy of said letter is attached hereto, made a part hereof and labeled Exhibit S)

14

34.  That contrary to The Wayne Independent article and editorial in the June 14, 2012, edition of said newspaper, Wayne Earley was not initially denied for Unemployment Compensation Benefits.  Instead, Plaintiff was initially granted said benefits and Honesdale Borough, not Wayne Early, appealed such decision.  (A copy of the first page of the Petition For Appeal is attached hereto, made a part hereof and labeled Exhibit T)

35.  That Plaintiff's Unemployment Benefits were again granted following the hearing on Honesdale Borough's appeal.  (A copy of the decision of the referee is attached hereto, made a part hereof and labeled Exhibit U)

36.  That Defendant has never reported or referenced the decision of the Unemployment Compensation Referee decision granting Plaintiff benefits.

37.  That at no time did Plaintiff ever receive a reprimand or negative comment or report in his personnel file held by Honesdale Borough.

38.  That in making the publications noted in Paragraphs 31 and 32 above and the implications contained therein The Wayne Independent has engaged in a course of conduct   which has sullied the reputation and good name of the Plaintiff by misrepresentations and false statements and accusations about Plaintiff's character, professional competency, professional qualifications and integrity.

15

39.  That the Defendant knew at least one year before publishing its defamatory articles about Plaintiff what qualifications were necessary to be a Zoning Officer, what qualifications were necessary to be a Building Code Official and the difference between the two.  In an article posted and published January 7, 2011, the Wayne Independent published "some of the qualifications Earley does hold" including the certification for Building Code Official and the duties thereof.  The same article also quotes Melissa Melewsky, Media Law counsel for the Pennsylvania Newspaper Association, regarding the qualifications to be a zoning officer.  A copy of said article is attached hereto, made a part hereof by reference and labeled Exhibit V.  Despite this knowledge, The Wayne Independent published the defamatory articles noted in Paragraphs 31 and 32 above and thereby consciously ignored the distinctions between and among the positions held by Plaintiff and falsely painted him as a greedy, unqualified and incompetent public official.

40.  That as the articles in Exhibit E attached hereto and made a part hereof confirm, Defendant consciously ignored the distinction between the two of the offices held by Plaintiff, the qualifications and job duties for each and engaged in defamatory acts upon Plaintiff instead.   The first article in Exhibit E refers to a report by the Wayne Independent in January of 2011 but pays no attention to the distinctions

16

reported at that time.  The second article/opinion piece in Exhibit E falsely equates the

Zoning Officer duty with licensing or certification.

41.  That Defendant knew at the time of writing Exhibit G attached hereto and

made a part hereof by reference that a Zoning Enforcement Officer, such as Plaintiff,

could inspect for zoning purposes and did not need credentials or certifications in

order to do so.  In spite of this knowledge, The Wayne Independent published Exhibit

G creating the impression that Plaintiff was not qualified to do inspections,

incompetent to do his job, and that his actions were illegal and could cause "major

lawsuits and cost the taxpayers a fortune."

42.  That Defendant knew that Councilman and Zoning Committee Chairman

Nick Slish was Plaintiff's immediate supervisor.  (See article posted February 8, 2012,

part of Exhibit D.)

43.  That approximately one month after the publication of Exhibits Q and R

attached hereto, Councilman Slish resigned.

44.  That by editorials published by The Wayne Independent on July 20, 2012,

the Defendant demonstrates that all of its articles directed at Plaintiff are part of an

intent to communicate a defamatory meaning in spite of the knowledge or reckless

disregard for the falsity of the same by painting Plaintiff and others in authority as

greedy, unqualified and incompetent .  Those two opinion pieces entitled "Another

17

One Bites the Dust" and "Replacing Slish Should Be Carefully Thought Out" are attached hereto, made a part hereof by reference and labeled Exhibits W and X respectively.  Without limiting the overall intent or actual malice demonstrated throughout Exhibits W and X, Plaintiff specifically points to the following:

## Replacing Slish Should Be Carefully Thought Out

A.  "Under Slish's watch, it was 'zoning gone wild'  with former Zoning Officer Wayne Earley not even being certified to do his own job."

B.  "The issue of zoning and planning chairman is huge.  We've just seen how the Zoning Office is used as a cash cow for the Borough.  A blatant violation of state law - in how it has been misused and abused."

## Another One Bites the Dust

A.  "Slish is concerned about the well-being of his family.  Good.  He should be.  We all are.  He doesn't see that trying to uncover the blatantly authoritarian self serving and greedy actions of himself and the small group of opportunistic "Good Old-Boys" he serves has ruined my family, but that's fine, too.  I asked for this job and I got it - good and hard as they say.

18

What is not fine is the fact that he (Slish) and the people he emulates have run this area for their own ends for far to long.

You greedy bastards know who you are.

That time is at its end.  You may not think so, but you are sadly mistaken.

Revealing the seamy underbelly of this county - and especially this town - has taken from me everything I held dear, with one exception; My disgust for the selfish and the corrupt who hold others down only to enrich themselves.  That inherent loathing has been sharpened to a razor point.  I've lost the family I"ve tried to care for largely because of this work and the abuses Slish and his ilk have visited upon me for doing the job.

So now, all I have left is this job  and a long-burning desire for justice stoked by what I've endured over the past year.

And time. Lots and lots of time.

I will use this time to rout out those who unofficially impose an unliveable prevailing wage in Honesdale and the rest of the county she claims to be the seat of; those who deal dirty behind closed doors, taking advantage of a population kept too long in the dark about what really goes on behind those doors.

Hear this, O masters of Wayne County, PA: the people who have been taken advantage of for decades know who you are.  And so do I.  Those people with whom

19

you never speak talk to me. They may be afraid, but I am not. I have nothing left to

lose and they have everything to gain.

I am coming for you. And they will follow.

I will find all that you have so carelessly hidden. They will use that knowledge

against you and your machinations.

And when the time comes, I will name names.

Sleep well tonight."

45. That Exhibits E, F, G, V, W, and X, demonstrate that the publications

noted in paragraphs 31 and 32 and the impressions which they were fairly calculated

to produce were false or were published without regard as to whether they were true

or false.

46. That Exhibits E, F, G, Q, R, V, W, and X demonstrate Defendant was

aware of the defamatory meaning of its publications noted in paragraphs 31 and 32

and continued to make such statements although Defendant knew the defamatory

meaning was likely for its readers.

47. That the actions of the Defendant, d/b/a The Wayne Independent in

misleading its readers by interchanging at will the positions of Zoning Officer,

Building Code Officer/Official, and General Code Enforcement Officer when

Defendant knew the difference among those positions and the qualifications, duties,

20

and authority associated with each was willful and wanton and the designed to sully

the reputation and good name of the Plaintiff Wayne Earley.

## COUNT I - IN DEFAMATION

48.  The Plaintiff incorporates herein by reference paragraphs 1 through 47 as if

the same were fully set forth at length.

49.  That the false and misleading impressions made by the publications set

forth in paragraph 31 and 32 above are defamatory and libelous by nature and when

taken as a whole and were published either with knowledge that the publications and

the impressions which they were fairly calculated to produce were false or without

regard to whether the same were true or false as set forth above.

50.  That as a direct and proximate result of the publications referenced in

paragraphs 31 and 32 above Plaintiff, Wayne Earley has been brought into reproach

and has been injured in his good name, his personal and professional reputation, his

employment and employability, and his feelings, to his great detriment and financial

loss.

WHEREFORE, Plaintiff, Wayne Earley, claims damages from the Defendants

in an amount in excess of $75,000.00 for compensatory damages and punitive

damages together with costs of suit.

## COUNT II - FALSE LIGHT INVASION OF PRIVACY

21

51. The Plaintiff incorporates herein by reference paragraphs 1 through 50 as if the same were fully set forth at length.

52. That the publications referenced in paragraph 31 and 32 above unreasonably placed Plaintiff in a false light before the public.

53. That the false and misleading publicity of private facts regarding Plaintiff in the publications referred to in paragraphs 31 and 32 above, specifically including, but without limitation, the article and editorial relating to Plaintiff's unemployment compensation proceedings are highly offensive to a reasonable person such as Plaintiff and are not of legitimate concern to the public.

54. That the Wayne Independent in publishing the articles and editorials referenced in paragraphs 31 and 32 did so either with knowledge of or in reckless disregard as to the falsity of the publicized matters as set forth above and the false light in which it placed Plaintiff, Wayne Earley.

55. That as a direct and proximate result of the publications referenced in paragraphs 31 and 32 above Plaintiff, Wayne Earley has been brought into reproach and has been injured in his good name, his personal and professional reputation, his employment and employability, and his feelings, to his great detriment and financial loss.

WHEREFORE, Plaintiff, Wayne Earley, claims damages from the Defendants in an amount in excess of $75,000.00 for compensatory damages and punitive together with costs of suit.

Respectfully submitted,

Mark R Zimmer, Esquire
Attorney for Plaintiff
ID #30405
1133 Main Street
Honesdale, PA 18431

## AFFIDAVIT

I verify that the statements made in this Amended Complaint are true and correct. I understand that false statements are made subject to the penalties of 18 Pa. C.S. Sec. 4904, relating to unsworn falsifications to authorities.

WAYNE EARLEY

Dated: October 17, 2013

23

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2013, I electronically filed the foregoing document with the Court's ECF system, and that all counsel in the case are EFC users.

/s/ Mark R Zimmer
Mark R Zimmer, Esquire
*Attorney for Plaintiff*

24