# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WAYNE EARLEY, | : |
| | : |
| Plaintiff, | : |
| v. | : Civil Action No. 3:12-1886 |
| | : |
| GATEHOUSE MEDIA PENNSYLVANIA | : (Judge Malachy E. Mannion) |
| HOLDINGS, INC., d/b/a THE WAYNE | : |
| INDEPENDENT, | : |
| | : |
| Defendant. | : |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

GREENBERG TRAURIG, LLP

Michael J. Grygiel
(Admitted *pro hac vice*)
54 State Street, 6th Floor
Albany, NY 12207
Tel:  518.689.1400
Fax:  518.689.1499
grygielm@gtlaw.com

Charles L. Rombeau (PA 204859)
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
Tel:  215.988.7800
Fax:  215.988.7801
rombeauc@gtlaw.com

*Attorneys for Defendant GateHouse*
*Media Pennsylvania Holdings, Inc.*
*d/b/a The Wayne Independent*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ ii

PRELIMINARY STATEMENT ....................................................... 1

STATEMENT OF FACTS ............................................................... 4

ARGUMENT ................................................................................... 4

    **POINT I**: THE AMENDED COMPLAINT FAILS TO STATE A
    CLAIM FOR LIBEL BASED ON ANY ALLEGEDLY FALSE
    STATEMENT IN THE PUBLICATIONS ...................................... 4

        A.    To State a Viable Defamation Claim, Earley Must Plead
            Facts that Plausibly Establish "Actual Malice." ........................ 4

        B.    None of Earley's Allegations Plausibly Establish That the
            Single False Statement Complained of Was Published
            With Actual Malice. ................................................................ 8

        C.    An Alleged Failure to Correct Does Not Demonstrate
            Actual Malice. ....................................................................... 10

    **POINT II**: THE AMENDED COMPLAINT FAILS TO STATE A
    CLAIM FOR LIBEL BASED ON ANY UNSTATED
    IMPLICATION ALLEGEDLY CONVEYED ............................... 11

        A.    The Amended Complaint Fails to Satisfy the "High
            Hurdle" Required for a Public Official to Plead a Libel
            by Implication Claim. ............................................................. 11

        B.    The Amended Complaint's Allegations Impermissibly
            Conflate Constitutional Malice With Common Law
            Malice. ................................................................................... 18

        C.    Plaintiff May Not Pursue a Defamation Claim Based on
            Subsidiary Meanings or Allegedly False "Impressions"
            Causing Only Incremental Harm. ........................................... 20

    **POINT III**: THE AMENDED COMPLAINT'S FALSE LIGHT
    CLAIM IS DEFECTIVE BASED ON THE SAME PLEADING
    FAILURE AND SHOULD BE DISMISSED ............................... 24

CONCLUSION ............................................................................. 25

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009)...............................................................3, 6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................3, 6

*Besen* v. *Parents & Friends of Ex-Gays, Inc.*,
    2012 WL 1440183 (E.D.Va. Apr. 25, 2012)................................10

*Biro v. Condé Nast*,
    883 F.Supp.2d 441 (S.D.N.Y. 2012) ("*Biro I*").....................9, 11, 11 n.3, 23

*Biro v. Condé Nast*,
    2013 WL 3948394 (S.D.N.Y. Aug. 1, 2013) *("Biro II")* .....................*passim*

*Carson v. Allied News Co.*,
    529 F.2d 206 (7th Cir. 1976)........................................................20

*Chapin v. Knight-Ridder, Inc.*,
    993 F.2d 1087 (4th Cir. 1993) ......................................................2

*Church of Scientology International v. Time Warner, Inc.*,
    932 F.Supp. 589 (S.D.N.Y. 1996) ...........................................21-22

*Coughlin v. Westinghouse Broadcasting & Cable, Inc.*,
    603 F.Supp. 377 (E.D. Pa. 1985)..................................................24

*Dunlap v. Philadelphia Newspapers, Inc.*,
    448 A.2d 6 (Pa. Super. 1982) ......................................................12

*Egiazaryan v. Zalmayev*,
    2011 WL 6097136 (S.D.N.Y. Dec. 7, 2011)................................18

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ....................................................4 n.1

*Garrison v. Louisiana*,
    379 U.S. 64 (1964).............................................................5, 13 n.4

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974)................................................................. 4-5

*Hanks v. WAVY Broadcasting, LLC*,
    2012 WL 405065 (E.D. Va. Feb. 8, 2012) ................................7 n.2

*Herbert v. Lando*,
    781 F.2d 298 (2d Cir.), *cert. denied*, 476 U.S. 1182 (1986) .......10, 21, 21 n.7

*Janklow v. Newsweek*,
    788 F.2d 1300 (8th Cir. 1986) ........................................................2

*Jewell v. NYP Holdings, Inc.*,
    23 F.Supp.2d 348 (S.D.N.Y. 1998) ...................................22, 23 n.8

*Kendall v. Daily News Publishing Co.*,
    716 F.3d 82 (3d Cir. 2013) ...................................................*passim*

*Locricchio v. Evening News Association*,
    476 N.W.2d 112 (Mich. 1991) .......................................................12

*Marcone v. Penthouse International Magazine*,
    754 F.2d 1072 (3rd Cir.), *cert denied*, 474 U.S. 864 (1985)......................5, 8

*Marier v. Lance Inc.*,
    2009 WL297713 (3d Cir. Feb. 9, 2009) ................................23 n.8

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991)..................................................................5, 6

*Mayfield v. NASCAR, Inc.*,
    674 F.3d 369 (4th Cir. 2012) ...............................................8, 18

*McDowell v. Paiewonsky*,
    769 F.2d 942 (3d Cir. 1985) ...........................................................8

*Medure v. New York Times Co.*,
    60 F.Supp.2d 477 (W.D. Pa. 1999) ...........................................19

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964)........................................................................5

*Newton v. NBC,*
    930 F.2d 662 (9th Cir. 1991) ..................................................................13 n.4

*Orenstein v. Figel,*
    677 F.Supp.2d 706 (S.D.N.Y. 2009) .......................................................7 n.2

*Parisi v. Sinclair,*
    845 F.Supp.2d 215 (D.D.C. 2012)............................................7 n.2, 20 n.7, 24

*Park v. Veasie,*
    2012 WL 1382222 (M.D. Pa. Apr. 20, 2012)...............................................24

*PPG Indus., Inc. v. Zurawin,*
    52 Fed. App'x 570 (3d Cir. 2002) ................................................................19

*Reliance Insurance Co. v. Barron's,*
    442 F.Supp. 1341 (S.D.N.Y. 1977) ..............................................................19

*Rutherford v. Katonah-Lewisboro School District,*
    670 F.Supp.2d 230 (S.D.N.Y. 2009) ........................................................7 n.2

*Saenz v. Playboy Enterprises, Inc.,*
    841 F.2d 1309 (7th Cir. 1988) ................................................................ 14-15

*Schaefer v. Lynch,*
    406 So.2d 185 (La. 1981) ..............................................................................12

*Schatz v. Republican State Leadership Committee,*
    669 F.3d 50 (1st Cir. 2012)......................................................................7, 24

*Schiavone Construction Co. v. Time, Inc.,*
    847 F.2d 1069 (3d Cir. 1988) ........................................................................5

*Smith v. Borough of Dunsmore,*
    633 F.3d 176 (3d Cir. 2011) ..........................................................................25

*St. Amant v. Thompson,*
    390 U.S. 727 (1968)........................................................................................5

*Strada v. Connecticut Newspapers, Inc.,*
    477 A.2d 1005 (Conn. 1984) ........................................................................12

*Tucker v. Fischbein,*
    237 F.3d 275 (3d Cir. 2001) ...................................................................13 n.4

*Woods v. Evansville Press Co.,*
    791 F.2d 480 (7th Cir. 1986) .........................................................................13

## <u>STATUTES AND RULES</u>

Fed. R. Civ. P. 12(b)(6).................................................................................................1

## <u>OTHER AUTHORITIES</u>

Robert D. Sack, Sack on Defamation:  Libel, Slander and Related Problems,
    § 2.4.18 (4th ed. 2010)...................................................................................22

## PRELIMINARY STATEMENT

Defendant GateHouse Media Pennsylvania Holdings, Inc. ("GateHouse"), the owner and publisher of *The Wayne Independent* ("*TWI*"), respectfully submits this memorandum of law in support of its motion to dismiss the Amended Complaint dated October 17, 2013, pursuant to Fed. R. Civ. P. 12(b)(6). Fundamental First Amendment principles control the disposition of this motion, in which Plaintiff Wayne Earley seeks to punish *TWI* for its truthful investigative reportage on matters of legitimate public concern.

In its September 30, 2013, Memorandum Decision (the "Decision"), this Court dismissed Plaintiff's initial Complaint and prohibited him from recovering damages for allegedly false and defamatory implications he claimed were conveyed in a series of news articles, editorials and opinion columns published by *TWI* because he "failed to sufficiently plead actual malice so as to proceed with his defamation and false light claims." (Decision, 13)  However, the Court permitted Plaintiff to file an Amended Complaint "to include more specific allegations" (*id.*, 15) provided he could do so in good faith.  (*Id.*)  The Court also set forth in painstaking detail the "high hurdle" (*id.*, 21) that Plaintiff, a public official, must clear by adequately pleading actual malice in order to satisfy the rigorous requirements of a libel by implication claim under the First Amendment.  (*Id.*, 19-20)

Desperate to assert some sort of claim, but unable (with a single, non-actionable exception) to identify any statements alleged to be false in *TWI*'s reportage, the Amended Complaint again advances a claim for libel by implication, alleging that the presentation of true and unchallenged facts nonetheless created "false and misleading impressions" that damaged Plaintiff's reputation. (AC ¶ 49) These allegations are particularly misdirected because they seek to punish the means of expressing facts, without denying the truth of the facts presented. Indeed, a hallmark of good reporting is to present information in a fashion which allows the reader to draw potential implications which may be gleaned from a set of facts. "Courts must be slow to intrude" in such cases because how to express a situation "must almost always be left to writers and editors. It is not the business of government." *Janklow v. Newsweek*, 788 F.2d 1300, 1306 (8th Cir. 1986). At the pleadings stage, implication claims must therefore be subjected to close scrutiny to avoid the chilling impact on admittedly true speech resulting from burdensome litigation and intrusive inquiry into the editorial process. *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092-93 (4th Cir. 1993) ("because the constitution provides a sanctuary for truth, a libel-by-implication plaintiff must make an especially rigorous showing").

Despite being provided in the Court's Decision with a constitutional roadmap relative to his libel by implication claim, and being permitted to file an

amended pleading only if he could "lay out enough facts from which malice might reasonably be inferred" (Decision, 13), Plaintiff has disregarded both the Court's guidance and its admonition.   While the Amended Complaint attaches three additional publications (Exhibits V, W and X) and includes several additional paragraphs referring to them (AC ¶¶ 39-47), it includes no factual allegations that plausibly support an inference of actual malice as required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).   Rather, it again merely recites the boilerplate legal definition of actual malice (AC ¶¶ 49, 54), which the Decision renounced as insufficient to sustain the initial Complaint. (Decision, 13)

Therefore, nothing has changed this time around.   The Amended Complaint makes no factual claim that *TWI* knew that any of the challenged publications were untrue or seriously doubted their truth.   Its actual malice allegations are untethered either to specific facts or to specific statements in the reportage at issue. Particularly telling is Plaintiff's failure to incorporate any facts based on the 1,079 pages of documents – including direct source materials relied on by *TWI* – produced to him in discovery during the pendency of the original Complaint. Source materials, or the lack thereof, are typically at the heart of allegations of actual malice, making Plaintiff's failure even more of a red flag.   Plaintiff has

again failed to state a viable claim for either defamation (Count I) or false light invasion of privacy (Count II).  The Amended Complaint should be dismissed.

**STATEMENT OF FACTS**[1]

Plaintiff Wayne Earley was the "Building Construction, Zoning and General Code Enforcement official" of Honesdale Borough until March 12, 2012.  (AC ¶¶ 10-11)  Defendant GateHouse Media Pennsylvania Holdings, Inc. owns *The Wayne Independent*, a newspaper published Tuesday through Saturday both in print and online (www.wayneindependent.com).  (*Id.*, ¶¶ 2-3)

Beginning on or about January of 2012 and continuing through July of that year, *TWI* published a series of twenty-nine (29) news articles and commentaries that are the subject of the Complaint's asserted causes of action.  (AC ¶¶ 31-32, 39-44 and Exs. A-R, V-X)

**ARGUMENT**

**POINT I: THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR LIBEL BASED ON ANY ALLEGEDLY FALSE STATEMENT IN THE PUBLICATIONS**

**A.      To State a Viable Defamation Claim, Earley Must Plead Facts that Plausibly Establish "Actual Malice."**

Any defamation plaintiff must demonstrate the requisite degree of fault as an essential element of a claim seeking to impose liability for public speech.  *Gertz*

---

[1]   This section is derived from the allegations of the Amended Complaint, which GateHouse accepts as true for the limited purpose of the instant motion.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

4

*v. Robert Welch, Inc.*, 418 U.S. 323, 346-47 (1974).  As this Court has determined,

Earley is a public official for purposes of the First Amendment:  "[i]n the instant

action, the plaintiff offers no substantive challenge to his status as a public official

during his time as a Code Enforcement Officer and subsequent Building

Construction, Zoning and General Code Enforcement Officer."  (Decision, 10)  He

is therefore required to demonstrate publication with "actual malice" as a

constitutional prerequisite to a defamation claim.  *New York Times Co. v. Sullivan*,

376 U.S. 254, 279-80 (1964); *Marcone v. Penthouse Int'l Magazine*, 754 F.2d

1072, 1087 (3d Cir.), *cert denied*, 474 U.S. 864 (1985).

　　　　The actual malice "standard is a subjective one, based on the defendant's

actual state of mind." *Schiavone Constr. Co. v. Time, Inc.*, 847 F.2d 1069, 1089

(3d Cir. 1988).  Hence, a public official like Earley is required to plead and prove

that at the time of publication defendants knew the challenged statements were

false, "*in fact* entertained serious doubts as to the[ir] truth," *St. Amant v.*

*Thompson*, 390 U.S. 727, 731 (1968) (emphasis added), or had a "high degree of

awareness of their probable falsity."  *Garrison v. Louisiana*, 379 U.S. 64, 74

(1964).  This is not the same showing as common law malice.  The existence of

actual malice turns on a defendant's awareness of falsity or probable falsity, not on

evil motives or an intent to harm.  *Masson v. New Yorker Magazine, Inc.*, 501 U.S.

496, 510-11 (1991).

Actual malice is "a term of art denoting deliberate or reckless falsification." *Id.* at 499.  As such, "even by way of recklessness, [it] is therefore a difficult standard to meet, and quite purposefully so:  as the Supreme Court has repeatedly noted, 'the stake of the people in public business and the conduct of public officials is so great that neither the defense of truth nor the standards of ordinary care would protect against self-censorship and thus adequately implement First Amendment policies.' " *Biro v. Condé Nast*, 2013 WL 3948394, *17 (S.D.N.Y. Aug. 1, 2013) ("*Biro II*") (citation omitted).

As this Court has emphasized, "[i]n the wake of *Iqbal* and *Twombly*, adequately pleading actual malice is an onerous task."  (Decision, 12-13)  To survive a motion to dismiss, a public official plaintiff is required to plead facts sufficient to render the alleged existence of actual malice "plausible on its face," the same pleading obligation imposed on every element of a civil claim.  *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678-79 ("only a complaint that states a plausible claim for relief survives a motion to dismiss").  Although the Amended Complaint adds several new paragraphs referring to three additional publications by *TWI* (AC ¶¶ 39-47 and Exs. V, W and X), and again recites the boilerplate legal definition of constitutional malice (*id.*, ¶¶ 49, 54), it is devoid of any factual allegations that would satisfy this rigorous standard.  It is unclear from the face of the Amended Complaint what Plaintiff contends these three publications

demonstrate – but they do not demonstrate actual malice.  Counts I and II therefore fail to state a claim upon which relief may be granted.

Just last year, two federal courts of appeal affirmed that this pleading standard applies fully to allegations of actual malice in a public official libel case.[2] In *Schatz v. Repub. State Leadership Comm.*, 669 F.3d 50 (1st Cir. 2012), the First Circuit affirmed the dismissal of libel claims by a former Senate candidate.  Much like Earley, Schatz had pleaded "actual-malice buzzwords" and generalized allegations that defendant painted him in a "sinister light" and had "basically branded him a criminal," but failed to allege facts that could plausibly establish defendant's serious doubts about the truth of the disputed statements.  *Id.* at 56-58. In finding the pleading inadequate, and in language equally applicable here, the *Schatz* court concluded that the complaint did not plausibly allege actual malice: "[m]ost importantly for present purposes, none of Schatz's allegations – singly or together – plausibly suggest that, given the articles' reporting, the [defendant] either knew that its statements were false or had serious doubts about their truth and dove recklessly ahead anyway."  *Id.* at 58.  The Fourth Circuit reached the

---

[2]   In addition to the recent decisions by the First Circuit and the Fourth Circuit discussed below in the text, several federal district courts have similarly rejected cursory averments of actual malice and required allegations of fact that plausibly could support such a finding before allowing a libel case to proceed into discovery.  *Parisi v. Sinclair*, 845 F.Supp.2d 215, 218-19 (D.D.C. 2012); *Rutherford v. Katonah-Lewisboro Sch. Dist.*, 670 F.Supp.2d 230, 242 (S.D.N.Y. 2009); *Orenstein v. Figel*, 677 F.Supp.2d 706, 711 (S.D.N.Y. 2009); *Hanks v. WAVY Broad., LLC*, 2012 WL 405065, *13 (E.D. Va. Feb. 8, 2012).

same conclusion in affirming judgment on the pleadings where a professional race car driver made only "conclusory allegations" of actual malice that could not plausibly be established by the factual allegations in the complaint.  *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 377-78 (4th Cir. 2012).

**B.     None of Earley's Allegations Plausibly Establish That the Single False Statement Complained of Was Published With Actual Malice.**

Out of the assemblage of twenty-nine (29) news articles, editorials and opinion columns published by *TWI* during the period from January - July of 2012 that it purports are actionable, the Amended Complaint identifies only a single statement alleged to be false:  that Plaintiff was not initially denied unemployment compensation benefits.  (AC, ¶ 34)  As a threshold constitutional point, absent more, a showing of falsity is insufficient to establish actual malice.  *Marcone*, 754 F.2d at 1091. ("[M]ere falsity, without more, is generally not sufficient to establish actual malice."); *McDowell v. Paiewonsky*, 769 F.2d 942, 951 (3d Cir. 1985) ("Although some misstatements may well have been made, the First Amendment, even for a private figure, requires more than proof of false statements.").  The Amended Complaint states no facts to support that this statement was published with "knowledge that [the] statement was false or [with] reckless disregard of whether it was false or not."  *Kendall v. Daily News Pub. Co.*, 716 F.3d 82, 94 (3d Cir. 2013) (internal quotation marks and citation omitted).  Nor are any facts pleaded that would demonstrate the statement was fabricated.  *Id.* at 95.

To the contrary, *TWI*'s description of Plaintiff in the body of the June 14, 2012, news article (Ex. Q) as appealing the decision on his unemployment benefits claim, and the article's reliance on information from identified sources who participated in the proceeding − including a supporter of Earley's − illustrates that it believed he had been denied benefits. *TWI*'s balanced reporting in this instance "is far from what might be expected of an author acting with actual malice." *Biro II*, 2013 WL 3948394, at *26. Similarly, the newspaper's editorial published on the same date (Ex. R) criticizing Plaintiff for seeking to receive unemployment benefits paid for by taxpayers, which opined that "it is perfectly legal and absolutely the right of Earley to do this but it just seems wrong," reinforces the absence of actual malice in the newspaper's commentary. *Biro v. Condé Nast*, 883 F.Supp.2d 441, 483 (S.D.N.Y. 2012) ("*Biro I*") ("This type of inquisitive approach falls short of the 'hatchet job' that [plaintiff's] counsel described at oral argument.").

The complete absence of any factual allegations that *TWI* thought its reportage concerning Plaintiff's claim for unemployment payments "was or could be false" confirms that an inference of actual malice is implausible − indeed, impossible − based on the deficient allegations in the Amended Complaint. *Kendall*, 716 F.3d at 97. Nothing in the Amended Complaint demonstrates that *TWI* deliberately falsified this statement or published it with actual awareness of

probable falsity. *Besen v. Parents & Friends of Ex-Gays, Inc.* 2012 WL 1440183, *5-6 (E.D.Va. Apr. 25, 2012) (public figure's libel complaint stating that defendant "knew" the statements were false, "had no reasonable grounds for believing such statements were true," and "no facts existed that would have substantiated [defendant's] defamatory statements" dismissed because it contained no factual allegations to support these conclusions).

## C. An Alleged Failure to Correct Does Not Demonstrate Actual Malice.

Earley's related allegation that *TWI* "has never reported or referenced" that he was granted unemployment compensation benefits (AC ¶ 36) − the functional equivalent of a demand for a correction − equally fails to support the allegation of actual malice, which is evaluated at the time of publication. *Herbert v. Lando*, 781 F.2d 298, 309 (2d Cir.) ("inaccuracies brought to the attention of the publisher after publication are not relevant to the publisher's state of mind before publication"), *cert. denied*, 476 U.S. 1182 (1986).  As a matter of constitutional principle, "the decision not to retract is, in and of itself, insufficient to establish by clear and convincing evidence that a defendant acted with actual malice." *Biro II*, 2013 WL 3948394, at *21.  This allegation is therefore not probative in any way of *TWI*'s state of mind at the time of publication. *Id.* ("a failure to retract occurs, by definition, *after* publication, meaning that its probative value as to a defendant's state of mind at the time of publication is dubious at best") (emphasis in original).

In short, "a defamation defendant's behavior after the publication" of an alleged defamatory statement "is not enough to nudge allegations [of actual malice] from possible to plausible." *Id.* at *26.

## POINT II:  THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR LIBEL BASED ON ANY UNSTATED IMPLICATION ALLEGEDLY CONVEYED

**A.  The Amended Complaint Fails to Satisfy the "High Hurdle" Required for a Public Official to Plead a Libel by Implication Claim.**

Unable to point to any material false facts in the numerous publications complained of other than the single statement discussed above,[3] Plaintiff strains to assert a claim based on some unstated implications allegedly conveyed by the true facts reported by *TWI*.  According to the Amended Complaint, "false and misleading impressions made by the publications . . . are defamatory and libelous by nature and when taken as a whole . . . ."  (AC ¶ 49)  Earley is therefore again proceeding on the disfavored theory known as libel by implication, "where a plaintiff asserts a defamation claim based not on any alleged falsity of the statements themselves, but on an alleged defamatory implication that could be derived from the unchallenged facts."  *Biro I*, 883 F.Supp.2d at 466.  As this Court cautioned in dismissing the first Complaint, Plaintiff has "a high hurdle to clear to

---

[3]  *See, e.g.*, *Biro I*, 883 F.Supp.2d at 463 ("But more fundamentally, outside of the single, peripheral detail regarding who initially proposed the venture and submitted the business plan, Biro does not allege that any description of the underlying events . . . is false.").

adequately alleg[e] actual malice in relation to the defamation by implication claim." (Decision, 21)  Once again, the Amended Complaint does not clear this "high hurdle" and fails to state a claim for libel.

Given the central concern of the First Amendment to protect the dissemination of true and newsworthy information, several courts have concluded that such claims based upon "the overall implications that may flow from true factual statements" can never sustain a libel claim because any other conclusion "would unacceptably inhibit" reporting on information of public concern. *Locricchio v. Evening News Ass'n*, 476 N.W.2d 112, 144 (Mich. 1991) (Cavanaugh, C.J., concurring).  *See also Strada v. Conn. Newspapers, Inc.*, 477 A.2d 1005, 1010 (Conn. 1984) (in absence of undisclosed facts, "first amendment considerations dictate that an article concerning a public figure composed of true or substantially true statements is not defamatory regardless of the tone or innuendo"); *Schaefer v. Lynch*, 406 So.2d 185, 188 (La. 1981) ("Where public officers and public affairs are concerned, there can be no libel by innuendo.").

Courts in Pennsylvania have not gone so far, and have accepted that a claim for libel by implication can potentially arise from a combination of statements that are not individually defamatory if the reader is led to draw an inference that is both damaging to the plaintiff and provably false.  *See Dunlap v. Phila. Newspapers, Inc.*, 448 A.2d 6, 15 (Pa. Super. 1982).  But given the substantial First Amendment

interest in protecting true speech, libel claims premised on unstated implications must be carefully constrained.[4]   As the Seventh Circuit warned in *Woods v. Evansville Press Co.*, 791 F.2d 480, 487 (7th Cir. 1986), "requiring a publisher to guarantee the truth of all the inferences a reader might reasonably draw from a

---

[4]   A "calculated falsehood" (*Garrison*, 379 U.S. at 75), by its very nature, requires a particular state of mind with respect to both the meaning conveyed by a statement and the truth or falsity of that meaning.  The actual malice standard set forth in *New York Times* addresses only the state of mind with respect to falsity.  In cases where a public official claims that a statement is false on its face (*e.g.*, "Jack stole Bill's car"), it is clear the defendant intended to convey a particular fact, and the constitutional question becomes whether he had "a subjective belief that the statement was false when made." *Tucker v. Fischbein*, 237 F.3d 275, 286 (3d Cir. 2001); *Kendall v. Daily News Pub. Co.*, 716 F.3d at 90 ("In ordinary defamation cases, intent to defame can be established solely through knowledge that the statement was false.").  But, when the plaintiff alleges – as Earley does here – that he was defamed by an implication (*e.g.*, "Jack sped away in Bill's car"), the defendant might know the alleged implication is false, but never have intended to convey that impression. *Kendall*, 716 F.3d at 90 ("In [defamation-by-implication] cases, we may no longer presume with certainty that the defendants knew they were making a defamatory statement because the statement has defamatory and nondefamatory meanings.").  When confronted by these circumstances, courts have warned against exposing defendants to liability "not only for what was not said but also for what was not intended to be said" because such a result would "eviscerate[] the First Amendment protections established by *New York Times*." *Newton v. NBC*, 930 F.2d 662, 681 (9th Cir. 1991).  The Third Circuit recognized this risk in *Kendall*, warning that absent a heightened state-of-mind requirement for defamatory implications, "actual malice could be found no matter how unlikely it is that a listener would interpret the statement as having the defamatory meaning." 716 F.3d at 91.  Thus, in order to protect "First Amendment interests in public-affairs libel suits," "mere knowledge of the defamatory meaning of a statement that also has a nondefamatory meaning cannot be enough." *Id.*  Any other rule would require a publisher to anticipate every possible meaning which a reader might draw from the text and impose the very self-censorship which is abhorrent to the First Amendment.

publication would undermine the uninhibited, open discussion of matters of public concern."

Consistent with these First Amendment limitations, in *Kendall v. Daily News Pub. Co.* the Third Circuit recently articulated in detail the significant obstacles to establishing a claim for libel by implication. In passages quoted at length in the Court's Decision dismissing Earley's first Complaint, *Kendall* clarified that a plaintiff alleging defamation by implication must establish at the outset two separate elements of actual malice: "a 'falsity' element and a 'communicative intent' element." 716 F.3d at 89; *see also* Decision, 20. The first element requires a showing that a defendant "knew that the defamatory meaning of [its] statement was false or w[as] reckless in regard to the defamatory meaning's falsity." *Id.* The second element requires a demonstration that the defendant "intended to communicate the defamatory meaning or knew of the defamatory meaning and was reckless in regard to it." 716 F.3d at 90. Importantly, "mere knowledge of the defamatory meaning of a statement that also has a nondefamatory meaning" is insufficient to find communicative intent, because this would chill protected speech under the First Amendment. *Id.* at 91.

The application of this exacting standard in *Saenz v. Playboy Enterprises, Inc.*, 841 F.2d 1309 (7th Cir. 1988) − case whose approach to libel by implication was expressly adopted by the Third Circuit in *Kendall*, 716 F.3d at 90 − is

instructive.  In *Saenz*, the defendant published a magazine article which implied that the plaintiff had participated in the torture of political prisoners while serving in a diplomatic post in Latin America.  *Id*. at 1312-13.  The plaintiff pointed to the magazine's inability to cite any proof that he was complicit in torture as evidence of reckless disregard of the truth.  *Id*. at 1318.  The Seventh Circuit rejected this argument as insufficient to satisfy the elements of actual malice required to sustain a libel by implication claim:

> Saenz contends that because the defendants admittedly lacked evidence of his participation in torture "they *knew* their statements, either directly or in their implications and innuendo, were false."  This argument, however, assumes its conclusion. . . . [T]he plaintiff fails to supply a missing link necessary to show that the defendants' acted with actual malice.  Not only must the plaintiff establish that the statement is susceptible of a defamatory meaning which the defendants knew to be false or which the defendants published with reckless disregard for its potential falsity, but also that the defendants intended to imply or were reckless toward the implications.  Evidence of defamatory meaning and recklessness regarding potential falsity does not alone establish the defendant's intent.

*Id.* at 1318 (emphasis in original) (footnote omitted).  The same could be said of the Amended Complaint here, which is devoid of any factual allegations that would plausibly support *TWI* intended to communicate or was reckless toward the implications complained of.

The decision in *Kendall* itself further underscores the Amended Complaint's deficiencies.  The plaintiff, Judge Kendall, released on bail a defendant who had a record of criminal violence, including a rape charge that was dismissed when the defendant pled guilty to assault with a deadly weapon.  716 F.3d at 84.  The rape charge and an assault conviction were *not* included in the criminal record presented to Judge Kendall at the bail hearing.  *Id.* ("Thus, nothing presented at the hearing indicated that [defendant] had a history of violence.").  Upon his release, the defendant murdered a 12-year-old girl.  *Id.*  In its news coverage of the murder, the defendant-newspaper described the bail hearing as follows:  "'Kendall found probable cause to charge [defendant] [with assault] but released him pending trial − despite [defendant's] history of violence including charges of rape, assault and weapons violations.'"  *Id.*  As a basis for his lawsuit, Judge Kendall contended that "this statement and similar statements in subsequent articles were defamatory because they implied that he was aware of [defendant's] violent history when, in fact, he was not."  *Id.*  The Third Circuit rejected Judge Kendall's libel claim based on the implication that "he knew of [defendant's] history of violence when he released [defendant] on his own recognizance" (*id.* at 92) for failure to satisfy the requirement that the defendant intended the defamatory meaning or was reckless in regard to it:

> This evidence is insufficient to satisfy the communicative-intent element by clear-and-convincing

> evidence in light of the subjective nature of the actual-malice inquiry.  The subjective nature of this inquiry requires that there be some evidence showing, directly or circumstantially, that the defendants themselves understood the potential defamatory meaning of their statement.  No direct evidence in the record of this case suggests that the defendants themselves knew of, much less intended, the defamatory meaning.

*Id.* at 93 (citations omitted).

The same result is compelled here.  Tellingly, the Amended Complaint is devoid of any factual allegations indicating that Plaintiff could plausibly demonstrate, whether through direct or indirect evidence, that *TWI* published the allegedly actionable reportage with actual malice with respect to either the falsity or communicative intent elements.[5]  Earley has failed to – because he cannot – allege that the reportage he disputes fabricated or recklessly distorted quotes or information provided by sources; that the allegedly defamatory publications were inherently improbable or otherwise on their face suggest actual malice; that *TWI* relied on unverified or unreliable sources; that the newspaper had information that contradicted the allegedly defamatory implications; or that *TWI*'s personnel made any statements or conducted themselves in a manner indicating that they knew or suspected that the allegedly defamatory implications were false.  *See Biro II*, 2013

---

[5]  Again, despite Plaintiff's having the benefit of more than a thousand pages of documents produced by GateHouse in discovery prior to the Court's dismissal of the initial Complaint on September 30, 2013, the Amended Complaint makes no reference whatsoever to any of *TWI*'s newsgathering source materials or the factual information they contain.

WL 3948394, at *27.   "In short, missing from the complaint are any factual allegations suggesting that [Earley] could plausibly demonstrate by clear and convincing evidence" that *TWI* published the challenged reportage with actual malice. *Id.*

The Amended Complaint offers nothing other than a conclusory averment of an "intent to communicate a defamatory meaning" which includes the boilerplate definition of actual malice.   (AC ¶ 44)   Simply parroting the standard's language "is unavailing because it is a legal conclusion not entitled to presumption of truth, and [plaintiff] alleges no facts plausibly supporting that conclusion." *Egiazaryan v. Zalmayev*, 2011 WL 6097136, *8 (S.D.N.Y. Dec. 7, 2011); *Mayfield*, 674 F.3d at 378 ("This kind of conclusory allegation – a mere recitation of the legal standard – is precisely the sort of allegations that *Twombly* and *Iqbal* rejected.").

**B.     The Amended Complaint's Allegations Impermissibly Conflate Constitutional Malice With Common Law Malice.**

Although its theory of recovery is not entirely clear, to the extent that the Amended Complaint (*see* ¶ 44) is attempting to meet the "onerous task" (Decision, 13) of pleading actual malice by reference to the strong language and opinionated advocacy included in an editorial (Ex. W) and column (Ex. X) − the latter of which nowhere even mentions or refers to Plaintiff − published in July of 2012, it again

misses the constitutional mark.[6]   In relying on *TWI*'s subsequent publication of the editorial and column, the Amended Complaint impermissibly conflates common law malice with constitutional malice.   "Actual malice is a term of art that the [Supreme] Court has explained 'should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will.'"   *Kendall*, 716 F.3d at 90-91 (citation omitted); *see also PPG Indus., Inc. v. Zurawin*, 52 Fed. App'x 570, 580 (3d Cir. 2002) (*per curiam*) ("The '[i]ll will toward the plaintiff' a defendant must possess to act with common law malice is 'not [an] element[] of the actual malice standard.'") (citations omitted); *Medure v. New York Times Co.*, 60 F.Supp.2d 477, 486 (W.D. Pa. 1999) ("It is important to emphasize that this standard is not satisfied by 'malice' in the usual sense, nor by evidence of personal spite or even ill will."); *Reliance Ins. Co. v. Barron's*, 442 F.Supp. 1341, 1350 (S.D.N.Y. 1977) ("When the Supreme Court uses a word, it means what the Court wants it to mean.  'Actual malice' is now a term of art having nothing to do with actual malice.").

---

[6]   As a threshold point, and as discussed above, the Amended Complaint ignores that the July 20, 2012, publication of the editorial (Ex. W) and opinion column (Ex. X) says little, if anything, about Defendant's state of mind at the time the preceding articles (Exs. A-R) were published.  *Biro II*, 2013 WL 3948394, at *21 (where post-publication evidence of actual malice is alleged, "its probative value as to a defendant's state of mind at the time of publication is dubious at best").

In short, "[w]hereas the common law standard focuses on the defendant's attitude toward the plaintiff, 'actual malice' concentrates on the defendant's attitude toward the truth or falsity of the material published." *Carson v. Allied News Co.*, 529 F.2d 206, 209 (7th Cir. 1976).   The Amended Complaint's allegations flout this First Amendment principle.

## C.   Plaintiff May Not Pursue a Defamation Claim Based on Subsidiary Meanings or Allegedly False "Impressions" Causing Only Incremental Harm.

Finally, Plaintiff alleges that he was defamed because *TWT*'s reportage "consciously ignored the distinction" (AC ¶ 40) between his job duties and qualifications as a Zoning Officer and as a Building Code Official.  (*Id.* at 39-41)  However, to the extent the Amended Complaint pursues claims by positing this artificial distinction, Earley is prohibited as a matter of law from recovering damages for those statements reporting his lack of certification as a Commercial Building Inspector from the Pennsylvania Department of Labor & Industry ("L&I"), which he does not − because he cannot − allege are false.[7]   Even if

---

[7]   The Amended Complaint admits that Plaintiff lacked appropriate certification from L&I for certain aspects of his work during various periods of his employment with Honesdale Borough.  (AC, ¶¶ 12-13, 26)  Contrary to the boilerplate allegations in the Amended Complaint of publication with actual malice arising from *TWT*'s putative failure to separate "two of the offices held by Plaintiff" (AC ¶ 40), the publications Plaintiff relies on demonstrate "just the opposite" (*Parisi v. Sinclair*, 845 F.Supp.2d at 219) – *i.e.*, that the reportage on Earley's failure to maintain appropriate certification was carefully sourced, accurately reported and truthful.  *See, e.g.*, Ex. E (referring to correspondence

Plaintiff could demonstrate that the remaining statements relating to his Zoning Officer qualifications are false as alleged (and GateHouse denies any falsity), those statements could have caused no more than nominal damage to Plaintiff's reputation, if any, and any such harm would have been caused by meanings that are subsidiary to the defamatory meanings of other statements for which Plaintiff may not recover as a matter of law.  Plaintiff should not be permitted to proceed with such claims that could establish, at most, incremental harm.  The Amended Complaint's defamation claim is therefore also barred by the subsidiary meaning and incremental harm doctrines.

Defamation law does not permit the "tail wagging the dog," so no claim may be based on allegedly defamatory statements that "merely imply the same view, and are simply an outgrowth of and subsidiary to those claims upon which it has been held there can be no recovery."  *Herbert v. Lando*, 781 F.2d at 312.  Under the subsidiary meaning doctrine,

> where a maliciously false statement implies the same ultimate conclusion as that of the remainder of the publication, which has been published without actual

---

between *TWI* and L&I officials confirming Earley "has not been certified to perform commercial property inspections since 2009" and "was not qualified to perform residential building inspections" from April of 2007 to August of 2010); Ex. G ("Time and time again, four times now and counting, the state has verified what we have uncovered about Earley and his lack of credentials."). *TWI*'s diligent investigation and reliance on official government sources in reporting Exs. E and G indicates "responsible editorial behavior, not actual malice." *Herbert v. Lando*, 781 F.2d at 308.

> malice, a plaintiff cannot "base his defamation action
> solely on inaccuracies contained within statements
> subsidiary to these larger views."

*Church of Scientology Int'l v. Time Warner, Inc.*, 932 F.Supp. 589, 594 (S.D.N.Y.

1996) (citation omitted).

The related incremental harm doctrine "measures the difference between the

harm caused by non-actionable statements when compared with the harm caused

by purportedly actionable statements and dismisses the latter when the difference is

incremental." *Jewell v. NYP Holdings, Inc.*, 23 F.Supp.2d 348, 387 (S.D.N.Y.

1998). The doctrine "helps protect against litigation either seeking an undeserved

financial windfall or designed to punish a speaker for stating harmful truths rather

than to compensate the plaintiff for the insignificant falsehoods." Sack, SACK ON

DEFAMATION, § 2.4.18 (4th ed. 2010).

Both the subsidiary meaning doctrine and the incremental harm doctrine

may properly be invoked on a Rule 12 motion based on the published statements

themselves, in which case a court considers "the natural implications of the

statements in order to determine the harm which flows therefrom." *Jewell*, 23

F.Supp.2d at 395.

The subsidiary meaning and incremental harm defenses apply and are

dispositive here, where the defamatory sting is caused by statements that are not

challenged in this lawsuit.[8]   *See Biro I*, 883 F.Supp.2d at 482 ("There is little question that a reader may walk away from the Article with a negative impression of Biro, but that impression would be largely the result of statements of fact that Biro does not allege to be false.").   The Amended Complaint should be dismissed because the defamatory meaning allegedly conveyed by the purported "interchanging at will the positions of Zoning Officer, Building Code Officer/Official, and General Code Enforcement Officer" (AC ¶ 47) and their respective duties and qualifications (*id.*) could not have inflicted any appreciable reputational harm given the alleged defamatory meanings of the non-actionable true statements published by *TWI* concerning Earley's lack of appropriate certification, or because the alleged defamatory meanings of the statements are subsidiary to the alleged meanings of the rest of the publications.

---

[8]   Because the Amended Complaint does not challenge *TWI*'s reportage of the true facts concerning his lack of L&I certification in his Building Code Official capacity, his attempt to unbundle his Zoning Officer's status as not requiring such "licensing or certification" (AC ¶ 40) runs headlong into the substantial truth doctrine.   Under Pennsylvania law, it is not necessary to demonstrate complete or literal accuracy to defeat a charge of libel.   All that is necessary is that the gist or substance of the disputed statements be true.   *Marier v. Lance, Inc.*, 2009 WL 297713, *2 (3d Cir. Feb. 9, 2009) ("'Truth' encompasses the defense of substantial truth.").   The test is "whether the [alleged] libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced."   *Id.* (citation and internal quotations omitted).   Here, despite Plaintiff's hypertechnical parsing of his various job responsibilities, the "main 'sting' or 'gist' of the overall content" remains the same and is therefore protected by the substantial truth doctrine.   *Jewell*, 23 F.Supp.2d at 369 (granting Rule 12(b)(6) motion to dismiss alleged defamatory statement because substantially true).

**<u>POINT III</u>: THE AMENDED COMPLAINT'S FALSE LIGHT CLAIM
IS DEFECTIVE BASED ON THE SAME PLEADING
FAILURE AND SHOULD BE DISMISSED**

The Amended Complaint's second cause of action for false light invasion of privacy − based on the same series of publications alleged to be defamatory in Count I (AC ¶ 52) − similarly requires publication with actual malice. *Park v. Veasie*, 2012 WL 1382222, *16 (M.D. Pa. Apr. 20, 2012); *Coughlin v. Westinghouse Broad. & Cable, Inc*., 603 F.Supp. 377, 389 (E.D. Pa. 1985). Again, while stating the controlling constitutional standard in formulaic and conclusory fashion (AC ¶ 54), the Amended Complaint fails to articulate any plausible factual basis for a finding of actual malice. *Schatz*, 669 F.3d at 55 (plaintiff acknowledged at Rule 12(b)(6) "motion hearing that if his defamation claim failed so too would his false-light claim;" both claims dismissed for failure adequately to plead actual malice); *Parisi*, 845 F.Supp.2d at 218 n.l (granting defendant's Rule 12(b)(6) motion to dismiss false light invasion of privacy claim "based upon the same factual allegations as a defamation claim" where Complaint failed to plausibly allege facts that would demonstrate actual malice). Count II of the Amended Complaint is therefore plagued with the same fundamental defect as Count I.

In addition, Count II is deficiently pleaded because, as the Amended Complaint's allegations make clear, the challenged publications concern the propriety of Earley's conduct as a public official, and are therefore not highly

offensive to a reasonable person as a matter of law. *Smith v. Borough of Dunsmore*, 633 F.3d 176, 182 (3d Cir. 2011). The Amended Complaint therefore fails to state a false light claim.

## CONCLUSION

Contrary to this Court's instruction, Plaintiff's allegations have failed to "lay out enough facts from which malice might reasonably be inferred." (Decision, 13) The Amended Complaint should therefore be dismissed, in its entirety and with prejudice, for failure to state a cause of action.

Dated: November 15, 2013                GREENBERG TRAURIG, LLP

/s/ Michael J. Grygiel
Michael J. Grygiel
(Admitted *pro hac vice*)
54 State Street, 6th Floor
Albany, NY 12207
Tel 518.689.1400
Fax 518.689.1499
grygielm@gtlaw.com

Charles L. Rombeau (PA 204859)
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
Tel 215.988.7800
Fax 215.988.7801
rombeauc@gtlaw.com

*Attorneys for Defendant GateHouse Media Pennsylvania Holdings, Inc. d/b/a The Wayne Independent*

## <u>CERTIFICATE OF SERVICE</u>

I, Charles L. Rombeau, hereby certify that on the 15th day of November, 2013, I caused a true and correct copy of the foregoing Motion to Dismiss Amended Complaint and Proposed Order to be served via the Court's Electronic Filing System upon the following counsel of record:

Mark R. Zimmer, Esq.
1133 Main Street
Honesdale, PA 18431

*Attorneys for Plaintiff*

/s/ Charles L. Rombeau
Charles L. Rombeau, Esq.